UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------x

ERNST RITOPER,

               Plaintiff,

   - against -

THE REPUBLIC OF ARGENTINA,

               Defendant.

----------------------------------------------------x

:     07 Cv. 6426 (TPG)
       ECF Case

:

:     **DECLARATION OF**
       **ERNST RITOPER**
:   **IN SUPPORT OF**
       **PLAINTIFF'S MOTION**
:     **FOR SUMMARY JUDGMENT**

Ernst Ritoper declares as follows:

1.    At all relevant times, I have been and remain a citizen of the Republic of Austria. I am fully familiar with the matters set forth herein and I make this declaration in support of my motion for summary judgment against defendant in this matter.

2.    Between September 1995 and August 1996, I acquired beneficial interests in a certain bond, ISIN No. US040114AH34 (the "Bond") issued by defendant, the Republic of Argentina ("Republic"), pursuant to a Fiscal Agency Agreement, dated as of December 10, 1993 (the "1993 Fiscal Agency Agreement") in the aggregate principal amount of $259,000. My purchases were as follows: $230,000 on or about September 19, 1995; $8,000 on or about February 8, 1996; $14,000 on or about July 12, 1996; and $7,000 on or about August 1, 1996. Copies of the 1993 Fiscal Agency Agreement and Exhibit 1 thereto (the "1993 Bond Form") are annexed hereto as Exhibits A and B, respectively.

3.    The Bond has a maturity date of December 20, 2003 and a coupon rate of 8.375%.

4.    I still own the beneficial interests in the Bond and have held them continuously since my original acquisition back in 1995-1996. A copy of my most recent bank statement

(including an English translation thereof) demonstrating my ownership is annexed hereto as

Exhibit C.

5.      Pursuant to section 20 of the 1993 Fiscal Agency Agreement, the Republic (i)

appointed Banco de la Nacion Argentina as its agent for service of process, (ii) agreed to

submit to the jurisdiction of this Court, and (iii) agreed to waive any claim of immunity,

including but not limited to sovereign immunity.

6.      Pursuant to the 1993 Bond Form, the following, *inter alia*, are defined as

"Events of Default":

> (a)      the Republic fails to pay any principal of any of the
> Bonds when due and payable or fails to pay any interest on
> any of the Bonds when due and payable and such failure
> continues for a period of 30 days; or …

> (d)      a moratorium on the payment of principal of, or
> interest on, the Public External Indebtedness of the
> Republic shall be declared by the Republic.

(Exhibit B at 7-8).

7.      The 1993 Bond Form further provides that following either of the foregoing

Events of Default, a note holder may give the Republic written notice declaring "the principal

amount of Bonds held by [such holder] to be due and payable immediately." See Exhibit B at

8.

8.      In or about December 2001, the Republic declared a moratorium on the

payment of principal and interest with respect to all of its foreign debt, including all payments

due under the Bond.

9.      In accordance with the first paragraph contained on page 8 of the 1993 Bond

Form, by letter dated April 12, 2007, I provided the Republic with written notice that I was

declaring the principal on the Bond to be due and payable immediately.  I have received no response to such letter.

10.    Despite such demand and the fact that the Bond has matured, the Republic has failed to make any payment of principal or interest due thereon to me.

11.    By reason of the foregoing, there has been an Event of Default on the Bond, and the Republic is in breach of its obligations to me and liable to me in the amount of $259,000, plus interest.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January,14, 2008

Ernst Ritoper

# EXHIBIT A

THE REPUBLIC OP ARGENTINA

U.S.-$1,250,000,000

8 3/8% BONDS DUE DECEMBER 20, 2003

FISCAL AGENCY AGREEMENT

Dated December 10, 1993

# THE REPUBLIC OF ARGENTINA

FISCAL AGENCY AGREEMENT dated as of December 10, 1993, between The Republic of Argentina (the "Republic") and Bankers Trust Company, a New York banking corporation, as fiscal agent.

1.    Underwriting Agreement.  The Republic has entered into an Underwriting Agreement dated December 9, 1993, with Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Salomon Brothers Inc and Banco Rio de la Plata S.A., as representatives of the several underwriters listed on Schedule II thereto, providing for the issue and sale by the Republic of U.S.$1,000,000,000 aggregate principal amount of 8 3/8% Bonds due December 20, 2003 (the "Bonds").  In addition, the Republic has agreed to issue and deliver U.S.$250,000,000 aggregate principal amount of Bonds to Banco Central de la Republica Argentina in exchange for certain other securities of the Republic.

2.    Appointment of Fiscal Agent; Paying Agents.
(a) The Republic hereby appoints Bankers Trust Company, at present having its office at 4 Albany Street, in the Borough of Manhattan, The City of New York, as fiscal agent, transfer agent, registrar and principal paying agent of the Republic for the Bonds, upon the terms and conditions set forth herein.  Bankers Trust Company accepts such appointments, and along with its successors as such fiscal agent, is hereinafter referred to as the "Fiscal Agent".

(b) The Republic may appoint one or more additional agents (hereinafter called a "Paying Agent" or the "Paying Agents") for the payment (subject to the applicable laws and regulations) of the principal of and interest or Additional Amounts (as defined in the terms and conditions of the Bonds), if any, on the Bonds at such place or places as the Republic may determine pursuant to an agreement (each, a "Paying Agency Agreement"); provided that the Republic will maintain at all times until no Bond is outstanding a Paying Agent (who may be the Fiscal Agent) in the Borough of Manhattan, The City of New York.  The Republic will keep the Fiscal Agent informed as to the name, address, and telephone and facsimile numbers of each Paying Agent appointed by it and will notify the Fiscal Agent of the resignation of any Paying Agent.  If at any time Bonds are issued in definitive registered pursuant to Section 6 hereof, the Republic, with the acknowledgment of the Fiscal Agent, will appoint a paying agent and transfer agent in Luxembourg and a paying agent in Hong Kong for as long as

the Bonds are listed on the Luxembourg Stock Exchange and
The Stock Exchange of Hong Kong Limited, respectively. The
Fiscal Agent shall arrange with each Paying Agent for the
payment, as provided herein, of the principal and interest
or Additional Amounts, if any, on the Bonds on terms
approved by the Republic (further references herein to
principal and interest shall be deemed to also refer to any
Additional Amounts).

     3.   <u>Authentication</u>. The Fiscal Agent shall, upon
delivery of the Bonds to it by the Republic, and a written
order or orders to authenticate and deliver Bonds in a
stated aggregate principal amount, (i) authenticate and
register not more than said aggregate principal amount of
Bonds and deliver them in accordance with the written order
or orders of the Republic and (ii) thereafter authenticate
and register Bonds and deliver them in accordance with the
provisions of Sections 5, 6 and 8 of this Agreement. The
total amount of the Bonds to be issued and outstanding at
any time shall not exceed the amount of U.S.$1,250,000,000
plus any additional bonds issued by the Republic pursuant to
any supplement hereto in accordance with Section 15 of this
Agreement.

     4.   <u>Form</u>. (a) The Bonds shall initially be issued
in the form of one or more fully registered global
certificates (such registered global certificates and any
registered global certificates issued upon any transfer or
exchange thereof or in replacement therefor are hereinafter
referred to as the "Global Bonds") without coupons and
registered in the name of The Depository Trust Company
("DTC") or its nominee (DTC, and any successor depository
appointed by the Republic pursuant to Section 6(b) hereof,
are hereinafter referred to as the "Depository"). So long
as the Depository or its nominee is the registered holder of
the Global Bonds it will be considered the sole owner and
holder of the Bonds for all purposes hereunder and under the
Global Bonds. None of the Republic, the Fiscal Agent or any
Paying Agent will have any responsibility or liability for
any aspect of the records relating to or payments made by
the Depository on account of beneficial interests in the
Global Bonds. Except as provided in Section 6 hereof,
owners of beneficial interests in the Global Bonds will not
be entitled to have Bonds registered in their names, will
not receive or be entitled to receive Bonds in definitive
registered form and will not be considered owners or holders
thereof under this Agreement. The Global Bonds will be
substantially in the form attached hereto as Exhibit 1.

     (b)  All Bonds (including the Global Bonds) shall
be executed on behalf of the Republic by the signature,

manual or in facsimile, of a duly authorized person designated by the Republic.  In the event that any official of the Republic who shall have signed or whose facsimile signature shall appear upon any of the Bonds shall cease to hold such office before the Bonds so signed shall actually have been authenticated, registered or delivered, such Bonds nevertheless may be authenticated, issued and delivered with the same force and effect as though such person who signed such Bonds had not ceased to be such official of the Republic.

5.    Registration, Transfers and Exchanges.  (a) The Fiscal Agent, as agent of the Republic for such purpose, will at all times keep at the office of the Fiscal Agent in the Borough of Manhattan, The City of New York, a register or registers for the registration and registration of transfers and exchanges of Bonds, in which shall be entered the names and addresses of the registered holders of Bonds and the particulars of the Bonds held by such registered holders.  Subject to Section 6 hereof, upon surrender for registration of transfer of any Bond at said office, the Fiscal Agent shall authenticate, register and deliver in the name of the transferee or transferees a new Bond or Bonds for a like aggregate principal amount.  Subject to Section 6 hereof, upon surrender of any Bond at said office for exchange, the Fiscal Agent shall authenticate, register and deliver in exchange for such Bond a new Bond or new Bonds of the appropriate authorized denomination(s) and for a like aggregate principal amount in accordance with the provisions of the Bonds.

(b)  All new Bonds authenticated and delivered by the Fiscal Agent upon registration of transfer or in exchange for Bonds of other denominations shall be so dated that neither gain nor loss of interest shall result from such registration of transfer or exchange.

(c)  All Bonds presented or surrendered for registration of transfer, exchange or payment shall be accompanied by a written instrument or instruments of transfer in form satisfactory to the Fiscal Agent, duly executed by the registered holder or its attorney duly authorized in writing and with the signatures thereon duly guaranteed by a commercial bank or trust company having its principal office in The City of New York or by a member of the New York Stock Exchange.

(d)  The Fiscal Agent shall not impose any service charge on the registered holder on any such registration, transfer or exchange of Bonds; however, the Republic may

require of the party requesting such transfer or exchange, as a condition precedent to the exercise of any right of transfer or exchange contained in this Agreement or in the Bonds, the payment of a sum sufficient to cover any stamp or other tax or other governmental charge payable in connection therewith.

(e)  The Republic, the Fiscal Agent and any Paying Agent may treat the person in whose name any Bond is registered as the owner of such Bond for the purpose of receiving payment of principal of and interest on such Bond, and all other purposes whatsoever, whether or not such Bond be overdue, and none of the Republic, the Fiscal Agent or any Paying Agent shall be affected by any notice to the contrary and any such payment shall be a good and sufficient discharge to the Republic, the Fiscal Agent and any Paying Agent for the amount so paid.

(f)  The Fiscal Agent shall not be required to register any transfer or exchange of Bonds during the period from the Regular Record Date (as defined in the Bonds) to the Interest Payment Date (as defined in the Bonds) and for the purposes of any interest payment made in accordance with Section 7(b) or (c) hereof, such payment shall be made to those persons in whose names the Bonds are registered on such Regular Record Date.

6.  <u>Special Provisions Relating to Global Bonds</u>.
(a)  Unless and until the Global Bonds are exchanged in whole for Bonds in definitive registered form, the Global Bonds may not be transferred except as a whole by the Depository to a nominee of the Depository or by a nominee thereof to the Depository or by the Depository or any such nominee to a successor Depository or a nominee of such successor Depository.

(b)  Except as provided in this subparagraph, Bonds will not be issued in definitive registered form.  If at any time the Depository notifies the Republic that it is unwilling or unable to continue as Depository for such Bonds, or if the Republic notifies the Depository that it will no longer continue as Depository for the Bonds, or if at any time the Depository ceases to be a clearing agency registered under the United States Securities Exchange Act of 1934, as amended, or otherwise ceases to be eligible to be a Depository, the Republic shall appoint a successor Depository with respect to such Bonds.  If a successor Depository for such Bonds is not appointed by the Republic within 90 days after the Republic receives such notice or becomes aware of such ineligibility, or if the Depository notifies the Fiscal Agent or the Republic of the

acceleration of the indebtedness under the Bonds in accordance with the terms of the Bonds, the Republic will execute, and the Fiscal Agent upon receipt of such executed definitive Bonds will authenticate and deliver, Bonds in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof, in an aggregate principal amount equal to the aggregate principal amount of the Global Bonds.

The Republic may at any time and in its sole discretion determine not to have any of the Bonds held in the form of Global Bonds. In such event, the Republic will execute, and the Fiscal Agent, upon receipt of such executed definitive Bonds will authenticate and deliver, Bonds in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof, in an aggregate principal amount equal to the aggregate principal amount of the Global Bonds.

Upon the exchange of the Global Bonds for Bonds in definitive registered form the Global Bonds shall be canceled by the Fiscal Agent. Bonds in definitive registered form issued in exchange for the Global Bonds pursuant to this section shall be registered in such names as the Depositary, pursuant to instructions from its direct or indirect participants or otherwise, shall instruct the Fiscal Agent or the Republic. The Fiscal Agent shall deliver such Bonds in definitive registered form to or as directed by the persons in whose names such definitive registered Bonds are so registered and will direct all payments to be made in respect of such Bonds in definitive registered form to the registered holders thereof on or after such exchange regardless of whether such exchange occurred after the record date for such payment.

All Bonds in definitive registered form, issued upon the exchange of the Global Bonds, shall be valid obligations of the Republic, evidencing the same debt, and entitled to the same benefits under this Agreement, as the Global Bonds surrendered upon such exchange.

7.  Payment.  (a)  The Republic will pay to the Fiscal Agent, in same-day funds, in such coin or currency of the United States as at the time of payment is legal tender for payment of public and private debts, to an account to be specified by the Fiscal Agent, on the day on which the same shall become due, all amounts to be paid on the Bonds for principal and interest on that date as required by the terms of the Bonds, and the Republic hereby authorizes and directs the Fiscal Agent, from the funds so paid to it, to make payment of the principal and interest in respect of the

5

Bonds in accordance with their terms and the provisions set forth below. If any date for payment in respect of a Bond is not a Business Day, such payment shall be made on the next following Business Day. "Business Day" means a day on which banking institutions in The City of New York and at the applicable place of payment are not authorized or obligated by law or executive order to be closed.

(b) Payment of principal and interest on the Global Bonds shall be made by the Fiscal Agent to the Depository in accordance with the regular procedures established from time to time by the Depository for use of its Same-Day Funds Settlement System.

(c) Payment of principal in respect of Bonds in definitive registered form issued pursuant to Section 6(b) hereof shall be made at the office of the Fiscal Agent in the Borough of Manhattan, The City of New York, or at the office of any Paying Agent appointed by the Republic for such purpose pursuant to this Agreement. Payment of interest due prior to or on maturity will be made by forwarding by post or otherwise delivering a check to the registered addresses of registered holders of Bonds, or, at the option of the Republic, otherwise transferring funds to the registered holders of the Bonds. Such check shall be made payable to the order of the registered owner or, in the case of joint registered owners, to the order of all such joint owners (failing instructions from them to the contrary) and shall be sent to the address of that one of such joint owners whose name stands first in the register as one of such joint owners. The Fiscal Agent shall mail or otherwise deliver such checks to the names and addresses of registered holders of Bonds sufficiently in advance of the relevant due date for payment that receipt of such checks by registered holders on or before the due date is reasonably assured.

(d) All money paid to the Fiscal Agent under Section 7(a) of this Agreement shall be held by it in a separate account from the moment when such money is received until the time of actual payment, in trust for the registered holders of Bonds to be applied by the Fiscal Agent to payments due on the Bonds at the time and in the manner provided for in this Agreement and the Bonds. Any money deposited with the Fiscal Agent for the payment of the principal or interest in respect of any Bond remaining unclaimed for two years after such principal or interest shall have become due and payable shall be repaid to the Republic without interest, and the registered holder of Bond may thereafter look only to the Republic for any payment to which such holder may be entitled.

6

8.   **Mutilated, Destroyed, Stolen or Lost Certificates.**   (a) In case any Bond certificate is mutilated, defaced, destroyed, stolen or lost, application for replacement shall be made to the Fiscal Agent who shall promptly transmit such application to the Republic.  Such application shall be accompanied by the mutilated or defaced certificate or receipt of proof, satisfactory to the Republic in its discretion, of the destruction, theft or loss of the certificate, and upon receipt by it of an indemnity satisfactory to it, the Republic shall execute a new certificate of like tenor, and upon written instructions from the Republic the Fiscal Agent shall thereupon cancel the mutilated or defaced certificate if applicable and authenticate, register and deliver such new certificate in exchange for the mutilated or defaced certificate or in substitution for the destroyed, stolen or lost certificate. Such new certificate will be so dated that neither gain nor loss in interest will result from such exchange or substitution.  All expenses associated with procuring such indemnity and with the preparation, authentication and delivery of a new certificate will be borne by the registered holder of the mutilated, defaced, destroyed, stolen or lost certificate.

(b)  Whenever any Bond, alleged to have been lost, stolen or destroyed in replacement for which a new Bond has been issued, is presented to the Fiscal Agent or any Paying Agent for payment at maturity or for registration of transfer or exchange, the Fiscal Agent or the Paying Agent, as the case may be, shall immediately notify the Republic in respect thereof and shall deal with such Bond in accordance with the Republic's instructions.

9.   **Maturity, Redemption and Purchases.**   (a) Unless previously repurchased by the Republic, as provided below, the principal amount of the Bonds is due and payable on December 20, 2003.

(b)  The Republic may at any time purchase Bonds at any price in the open market or otherwise, provided that in any such case such purchase or purchases are in compliance with all relevant laws, regulations and directives.  The Bonds so purchased, while held by or on behalf or for the benefit of the Republic shall not entitle the registered holder thereof to vote at any meetings of registered holders of Bonds and shall not be deemed to be outstanding for the purposes of calculating quorums at meetings of the registered holders of the Bonds. Notwithstanding the foregoing, the Republic will not acquire any beneficial interest in any Bonds unless it gives prior written notice of each acquisition to the Fiscal Agent.  The

Fiscal Agent will be entitled to rely without further investigation on any such notification (or lack thereof).

(c)  If the Republic elects to cancel any Bonds when Bonds have been issued in the form of a Global Bond, it may request the Fiscal Agent to instruct the Depository to reduce the outstanding aggregate principal amount of the Global Bonds in accordance with the regular procedures of the Depository in effect at such time.

10.  <u>Cancellation and Destruction</u>.  All Bonds which are paid at maturity or upon earlier repurchase, or are mutilated, defaced or surrendered in exchange for other certificates, shall be cancelled by the Fiscal Agent who shall register such cancellation.  The Fiscal Agent shall, as soon as practicable after the date of any such cancellation, furnish the Republic with a certificate or certificates stating the serial numbers and total number of Bonds that have been cancelled.  The Fiscal Agent shall destroy all cancelled Bonds in accordance with the instructions of the Republic and shall furnish to the Republic, on a timely basis, certificates of destruction stating the serial numbers, dollar value and total number of all Bonds destroyed hereunder.

11.  (a)  <u>Limit on Liability</u>.  In acting under this Agreement the Fiscal Agent and any Paying Agent are acting solely as agents of the Republic and do not assume any obligation or relationship of agency or trust for or with any of the holders of the Bonds, except that all funds held by the Fiscal Agent for payment of principal or interest shall be held in trust, subject to the provisions of Sections 5 and 7(d).

(b)  <u>Acceptance of Appointment</u>.  The Fiscal Agent and each Paying Agent accepts its obligations set forth in or arising under this Agreement, the Paying Agency Agreements and the Bonds upon the terms and conditions hereof and thereof, including the following, to all of which the Republic agrees and to all of which the holders of the Bonds shall be subject:

(i)  the Fiscal Agent may consult as to legal matters with lawyers selected by it, who may be employees of or regular independent counsel to the Republic, and the Fiscal Agent shall be protected and shall incur no liability for action taken, or suffered to be taken, with respect to such matters in good faith and in accordance with the opinion of such lawyers; and

(ii)  the Fiscal Agent and each Paying Agent, and
their officers, directors and employees, may become the
holder of, or acquire any interest in, any Bonds, with the
same rights that it or they would have if it were not the
Fiscal Agent or a Paying Agent hereunder, or they were not
such officers, directors, or employers, and may engage or be
interested in any financial or other transaction with the
Republic and may act on, or as depository, trustee or agent
for, any committee or body of holders of Bonds or other
obligations of the Republic as freely as if it were not the
Fiscal Agent or a Paying Agent hereunder or they were not
such officers, directors, or employees.

12.  Expenses and Indemnity.  (a)  In connection
with the Fiscal Agent's appointment and duties as Fiscal
Agent, the Republic will pay the Fiscal Agent compensation
agreed upon by them.  The Republic will indemnify the Fiscal
Agent and each Paying Agent against any loss or liability
and agrees to pay or reimburse the Fiscal Agent and each
Paying Agent for any reasonable expense, which loss,
liability or reasonable expense may be incurred by the
Fiscal Agent or any Paying Agent by reason of, or in
connection with, the Fiscal Agent's or any Paying Agent's
appointment and duties as such, except as such result from
the negligence, bad faith or wilful misconduct of the Fiscal
Agent or any Paying Agent or their respective directors,
officers, employees or agents.  In addition, the Republic
shall pursuant to arrangements separately agreed upon by the
Republic and the Fiscal Agent, transfer to the Fiscal Agent,
upon presentation of substantiating documentation
satisfactory to the Republic, amounts sufficient to
reimburse the Fiscal Agent for certain out-of-pocket
expenses reasonably incurred by it and by any Paying Agent
in connection with their services.  The obligation of the
Republic under this paragraph shall survive payment of the
Bonds and resignation or removal of the Fiscal Agent.

(b)  The Fiscal Agent and each Paying Agent agrees
to indemnify and hold harmless the Republic against all
direct claims, actions, demands, damages, costs, losses and
liabilities (excluding consequential and punitive damages)
arising out of or relating to the bad faith or wilful
misconduct of the Fiscal Agent or any Paying Agent or their
respective directors, officers, employees or agents.

13.  Successor Fiscal Agent.  (a) The Republic
agrees that there shall at all times be a Fiscal Agent
hereunder, and that the Fiscal Agent shall be a bank or
trust company organized and doing business under the laws of
the United States of America or of the State of New York, in
good standing and having a place of business in the Borough

9

of Manhattan, The City of New York, and authorized under such laws to exercise corporate trust powers.

Any corporation or bank into which the Fiscal Agent hereunder may be merged or converted, or any corporation with which the Fiscal Agent may be consolidated, or any corporation or bank resulting from any merger, conversion or consolidation to which the Fiscal Agent shall sell or otherwise transfer all or substantially all of the corporate trust business of the Fiscal Agent, provided that it shall be qualified as aforesaid, shall be the successor Fiscal Agent under this Agreement without the execution or filing of any paper or any further act on the part of any of the parties hereto, but subject to prior notice to and the prior approval of the Republic.

(b)   The Fiscal Agent may at any time resign by giving written notice to the Republic of its resignation, specifying the date on which its resignation shall become effective (which shall not be less than 120 days after the date on which such notice is given unless the Republic shall agree to a shorter period); provided that no such notice shall expire less than 30 days before or 30 days after the due date for any payment of principal or interest in respect of the Bonds.   The Republic may remove the Fiscal Agent at any time by giving written notice to the Fiscal Agent specifying the date on which such removal shall become effective.   Such resignation or removal shall only take effect upon the appointment by the Republic of a successor Fiscal Agent and upon the acceptance of such appointment by such successor Fiscal Agent.   Any Paying Agent may resign or may be removed at any time upon like notice, and the Republic in any such case may appoint in substitution therefor a new Paying Agent or Paying Agents.

(c)   The appointment of the Fiscal Agent hereunder shall forthwith terminate, whether or not notice of such termination shall have been given, if at any time the Fiscal Agent becomes incapable of performing its duties hereunder, or is adjudged bankrupt or insolvent, or files a voluntary petition on bankruptcy or makes an assignment for the benefit of its creditors or consents to the appointment of a liquidator or receiver of all or any substantial part of its property or admits in writing its inability to pay or meet its debts as they mature or suspends payment thereof, or if a resolution is passed or an order made for the winding up or dissolution of the Fiscal Agent, or if a liquidator or receiver of the Fiscal Agent of all or any substantial part of its property is appointed, or if any order of any court is entered approving any petition filed by or against it under the provisions of any applicable bankruptcy or

10

insolvency law or if any public officer takes charge or control of the Fiscal Agent or its property or affairs for the purposes of rehabilitation, conservation or liquidation.

(d)  Prior to the effective date of any such resignation or removal of the Fiscal Agent, or if the Fiscal Agent shall become unable to act as such or shall cease to be qualified as aforesaid, the Republic shall appoint a successor Fiscal Agent, qualified as aforesaid.  Upon the appointment of a successor Fiscal Agent and its acceptance of such appointment, the retiring Fiscal Agent shall, at the direction of the Republic and upon payment of its compensation and expenses then unpaid, deliver and pay over to its successor any and all securities, money and any other properties then in its possession as Fiscal Agent and shall thereupon cease to act hereunder.

Any successor Fiscal Agent appointed hereunder shall execute, acknowledge and deliver to its predecessor and to the Republic an instrument accepting such appointment hereunder, and thereupon such successor without any further act, deed or conveyance, shall become vested with all the authority, rights, powers, trusts, immunities, duties and obligations of such predecessor, with like effect as if originally named Fiscal Agent hereunder.

(e)  If the Fiscal Agent resigns or ceases to act as the Republic's fiscal agent in respect of the Bonds pursuant to Section 13(c) of this Agreement, the Fiscal Agent shall only be entitled to annual fees otherwise payable to it under this Agreement on a pro rata basis for that period since the most recent anniversary of this Agreement during which the Fiscal Agent has acted as fiscal agent hereunder.  In the event that the Fiscal Agent ceases to act as the Republic's fiscal agent in respect of the Bonds for any other reason, the Fiscal Agent shall be entitled to receive the full amount of the annual fees payable to it in respect of the Bonds pursuant to Section 12 of this Agreement.

14.  Meetings of Holders of Bonds; Modifications.
(a)  A meeting of registered holders of Bonds may be called at any time and from time to time to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Bonds to be made, given or taken by registered holders of Bonds or to modify, amend or supplement the terms of the Bonds or this Agreement as hereinafter provided.  The Fiscal Agent may at any time call a meeting of holders of Bonds for any such purpose to be held at such time and at such place in the Borough of Manhattan, The City of New York as the

11

Fiscal Agent shall determine.  Notice of every meeting of
registered holders of Bonds, setting forth the time and the
place of such meeting and in general terms the action
proposed to be taken at such meeting, shall be given as
provided in the terms of the Bonds, not less than 30 nor
more than 60 days prior to the date fixed for the meeting.
In case at any time the Republic or the registered holders
of at least 10% in aggregate principal amount of the
Outstanding Bonds (as defined in subsection (d) of this
Section) shall have requested the Fiscal Agent to call a
meeting of the registered holders of Bonds for any such
purpose, by written request setting forth in reasonable
detail the action proposed to be taken at the meeting, the
Fiscal Agent shall call such meeting for such purposes by
giving notice thereof.

        To be entitled to vote at any meeting of regis-
tered holders of Bonds, a person shall be a registered
holder of Outstanding Bonds or a person duly appointed by an
instrument in writing as proxy for such a holder.  The
persons entitled to vote a majority in principal amount of
the Outstanding Bonds shall constitute a quorum.  At the
reconvening of any meeting adjourned for a lack of a quorum,
the persons entitled to vote 25% in principal amount of the
Outstanding Bonds shall constitute a quorum for the taking
of any action set forth in the notice of the original
meeting.  The Fiscal Agent may make such reasonable and
customary regulations as it shall deem advisable for any
meeting of registered holders of Bonds with respect to the
appointment of proxies in respect of registered holders of
Bonds, the record date for determining the registered
holders of Bonds who are entitled to vote at such meeting
(which date shall be set forth in the notice calling such
meeting hereinabove referred to and which shall be not less
than 30 nor more than 90 days prior to such meeting, the
adjournment and chairmanship of such meeting) the appoint-
ment and duties of inspectors of votes, the submission and
examination of proxies, certificates and other evidence of
the right to vote, and such other matters concerning the
conduct of the meeting as it shall deem appropriate.

        (b)  (i) At any meeting of registered holders of
Bonds duly called and held as specified above, upon the
affirmative vote, in person or by proxy thereunto duly
authorized in writing, of the registered holders of not less
than 66 2/3% in aggregate principal amount of the Bonds then
Outstanding (or of such other percentage as may be set forth
in the Bonds with respect to the action being taken), or
(ii) with the written consent of the owners of not less than
66 2/3% in aggregate principal amount of the Bonds then
Outstanding (or of such other percentage as may be set forth

12

in the text of the Bonds with respect to the action being taken), the Republic and the Fiscal Agent may modify, amend or supplement the terms of the Bonds or this Agreement, in any way, and the registered holders of Bonds may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Bonds to be made, given, or taken by registered holders of Bonds; provided, however, that no such action may, without the consent of the registered holder of each Bond, (A) change the due date for the payment of the principal of or any installment of interest on any Bond, (B) reduce the principal amount of any Bond, the portion of such principal amount which is payable upon acceleration of the maturity of such Bond or the interest rate thereon, (C) change the coin or currency in which or the required places at which payment with respect to interest or principal in respect of the Bonds is payable, (D) reduce the proportion of the principal amount of Bonds the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement or the terms and conditions of the Bonds or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (E) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Bonds, to (i) any modification of any provisions of the Fiscal Agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in this Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of this Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Bonds. Any such modification, authorization or waiver shall be binding on the registered holders of Bonds and, if the Fiscal Agent so requires, such modification shall be notified to the registered holders of Bonds as soon as practicable.

It shall not be necessary for the vote or consent of the registered holders of the Bonds to approve the particular form of any proposed modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action, but it shall be sufficient if such vote or consent shall approve the substance thereof.

13

(c)  Any instrument given by or on behalf of any registered holder of a Bond in connection with any consent to or vote for any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action will be irrevocable once given and will be conclusive and binding on all subsequent registered holders of such Bond or any Bond issued directly or indirectly in exchange or substitution therefor or in lieu thereof.  Any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action will be conclusive and binding on all registered holders of Bonds, whether or not they have given such consent or cast such vote, and whether or not notation of such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action is made upon the Bonds.  Notice of any modification or amendment or, supplement to, or request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Bonds or this Agreement (other than for purposes of curing any ambiguity or of curing, correcting or supplementing any defective provision hereof or thereof) shall be given to each registered holder of Bonds, in all cases as provided in the Bonds.

Bonds authenticated and delivered after the effectiveness of any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action may bear a notation in the form approved by the Fiscal Agent and the Republic as to any matter provided for in such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action.  New Bonds modified to conform, in the opinion of the Fiscal Agent and the Republic, to any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action may be prepared by the Republic, authenticated by the Fiscal Agent (or any authenticating agent appointed pursuant to Section 3 hereof) and delivered in exchange for Outstanding Bonds.

(d)  For purposes of the provisions of this Agreement and the Bonds, any Bond authenticated and delivered pursuant to this Agreement shall, as of any date of determination, be deemed to be "Outstanding", except:

(i)  Bonds theretofore cancelled by the Fiscal Agent or delivered to the Fiscal Agent for cancellation or held by the Fiscal Agent for reissuance but not reissued by the Fiscal Agent; or

14

(ii)  Bonds which have become due and payable at maturity or otherwise and with respect to which monies sufficient to pay the principal thereof and any interest thereon shall have been made available to the Fiscal Agent;

provided, however, that in determining whether the registered holders of the requisite principal amount of Outstanding Bonds are present at a meeting of registered holders of Bonds for quorum purposes or have consented to or voted in favor of any request, demand, authorization, direction, notice, consent, waiver, amendment, modification or supplement hereunder, Bonds owned directly or indirectly by the Republic shall be disregarded and deemed not to be Outstanding.

15.  <u>Further Issues</u>.  The Republic may from time to time, without notice to or the consent of the registered holders of the Bonds, create and issue further bonds ranking <u>pari passu</u> with the Bonds in all respects (or in all respects except for the payment of interest accruing prior to the issue date of such further bonds or except for the first payment of interest following the issue date of such further bonds) and so that such further bonds shall be consolidated and form a single series with the Bonds and shall have the same terms as to status, redemption or otherwise as the Bonds.  Any further bonds shall be issued with the benefit of an agreement supplemental to this Agreement.

16.  <u>Reports</u>.  (a)  The Fiscal Agent shall furnish to the Republic such reports as may be required by the Republic relative to the Fiscal Agent's performance under this Agreement.  The Republic may, whenever it deems it necessary, inspect books and records maintained by the Fiscal Agent pursuant to this Agreement, if any.

(b)  The Republic covenants to notify the Fiscal Agent in writing immediately on becoming aware of any Event of Default (as defined in the Bonds) or any event or circumstance which could with the giving of notice or lapse of time become an Event of Default (a "Potential Event of Default").

(c)  The Republic will send to the Fiscal Agent, on or before December 31 in each year (beginning with December 31, 1994), and within 14 days after any written notice by the Fiscal Agent, a certificate of the Republic signed by a duly authorized official of the Republic to the effect that, having made all reasonable inquiries, to the best knowledge of such duly authorized official, no Event of

15

Default or Potential Event of Default has occurred and is
continuing on the date of such certificate or, if an Event
of Default or a Potential Event of Default has occurred, the
circumstances surrounding it and the steps that the Republic
has taken or proposes to take to remedy it.

(d)  The Republic will send to the Fiscal Agent as
soon as practicable after being so requested by the Fiscal
Agent a certificate of the Republic, signed by a duly
authorized official of the Republic stating the aggregate
principal amount of the Bonds held by or on behalf of the
Republic at the date of such certificate.

17.  Forwarding of Notice; Inquiries.  (a)  If the
Fiscal Agent shall receive any notice or demand addressed to
the Republic pursuant to the provisions of the Bonds, the
Fiscal Agent shall promptly forward such notice or demand to
the Republic.

(b)  The Fiscal Agent shall respond promptly to
any inquiries received from any registered holder of Bonds
regarding the matters covered by paragraphs (b), (c) or (d)
of Section 16 of this Agreement.

18.  Listings.  The Republic agrees to use all
reasonable endeavors to maintain the listing of the Bonds on
the Luxembourg Stock Exchange, The Stock Exchange of Hong
Kong Limited and the Buenos Aires Stock Exchange.  If,
however, it is unable to do so, having used such endeavors,
or if the maintenance of such listing is agreed by the
Fiscal Agent to be unduly onerous and the Fiscal Agent is
satisfied that the interests of registered holders of the
Bonds would not thereby be materially prejudiced, it will
instead use all reasonable endeavors to obtain and maintain
a listing of the Bonds on such other stock exchange or
exchanges as it may decide.

19.  Notices.  (a)  Any communications from the
Republic to the Fiscal Agent with respect to this Agreement
shall be addressed to Bankers Trust Company, 4 Albany
Street, New York, New York 10006,  Fax No.: 212-250-6961 or
212-250-6392, Tel. No.: 212-250-6571 and any communications
from the Fiscal Agent to the Republic with respect to this
Agreement shall be addressed to the Subsecretaría de
Financiamiento, Hipólito Yrigoyen 250, Piso 6 - Oficina 627,
1310 - Buenos Aires, Attention: Deuda Externa, Fax No.: 011-
54-1-349-6080, Tel. No.: 011-541-349-6242 (or such other
address as shall be specified in writing by the Fiscal Agent
or by the Republic, as the case may be) and shall be
delivered in person or sent by first class prepaid post or
by facsimile transmission subject, in the case of facsimile

16

transmission, to confirmation by telephone to the foregoing addresses. Such notice shall take effect in the case of delivery in person, at the time of delivery, in the case of delivery by first class prepaid post seven (7) business days after dispatch and in the case of delivery by facsimile transmission, at the time of confirmation by telephone.

(b)  All notices to the registered holders of Bonds will be published in English in London, England in the Financial Times, in New York, New York in The Wall Street Journal, and so long as the Bonds are listed on the Luxembourg Stock Exchange and The Stock Exchange of Hong Kong Limited, in Luxembourg in the Luxemburger Wort and in Hong Kong in the South China Morning Post, respectively. If at any time publication in any such newspaper is not practicable, notices will be valid if published in an English language newspaper with general circulation in the respective market regions as the Republic with the approval of the Fiscal Agent, shall determine. In addition, notices will be published in Spanish in a newspaper of general circulation in Argentina, as the Republic shall determine. Any such notice shall be deemed to have been given on the date of such publication or, if published more than once or on different dates, on the first date on which publication is made. Written notice will also be given to DTC, provided at the time of such notice the Bonds are represented by a DTC Global Bond.

20.  Consent to Service; Jurisdiction.  The Republic hereby appoints Banco de la Nación Argentina, at its office located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose] as its authorized agent (the "Authorized Agent") upon whom process may be served in any action arising out of or based on the Bonds or this Agreement by the holder of any Bond which may be instituted in any state or federal court in The City of New York, and expressly accepts the jurisdiction of any such court in respect of such action. Such appointment shall be irrevocable until all amounts in respect of the principal of and any interest due and to become due on or in respect of all the Bonds have been provided to the Fiscal Agent pursuant to the terms hereof, except that, if for any reason, such Authorized Agent ceases to be able to act as Authorized Agent or to have an address in the Borough of Manhattan, The City of New York, the Republic will appoint another person in the Borough of Manhattan, The City of New York, selected in its discretion, as such Authorized Agent. Prior to the date of issuance of any Bonds hereunder, the Republic shall obtain the consent of Banco de la Nación

17

Argentina to its appointment as such Authorized Agent, a copy of which acceptance it shall provide to the Fiscal Agent. The Republic shall take any and all action, including the filing of any and all documents and instruments, that may be necessary to continue such appointment or appointments in full force and effect as aforesaid. Upon receipt of such service of process, the Authorized Agent shall advise the Subministry of Finance promptly by telecopier at 011-54-1-349-6080. Service of process upon the Authorized Agent at the address indicated above, as such address may be changed within the Borough of Manhattan, The City of New York by notice given by the Authorized Agent to each party hereto, shall be deemed, in every respect, effective service of process upon the Republic. The Republic hereby irrevocably and unconditionally waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any aforesaid action arising out of or in connection with this Agreement brought in any such court has been brought in an inconvenient forum. Neither such appointment nor such acceptance of jurisdiction shall be interpreted to include actions brought under the United States federal securities laws. This appointment and acceptance of jurisdiction is intended to be effective upon execution of this agreement without any further act by the Republic before any such court and introduction of a true copy of this Agreement into evidence shall be conclusive and final evidence of such waiver.

Notwithstanding the foregoing, any action arising out of or based on the Bonds may be instituted by the holder of any Bond in any competent court in the Republic of Argentina.

The Republic hereby irrevocably waives and agrees not to plead any immunity from the jurisdiction of any such court to which it might otherwise be entitled in any action arising out of or based on the Bonds or this Agreement by the holder of any Bond.

21.  Governing Law and Counterparts. This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of New York. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

22.  Headings.  The headings for the sections of this Agreement are for convenience only and are not part of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Fiscal Agency Agreement as of the date first above written.

THE REPUBLIC OF ARGENTINA

By  _La Greca_____

       Name:

       Title:


BANKERS TRUST COMPANY


By  _____

       Name:

       Title:

19

22.  <u>Headings</u>.  The headings for the sections of
this Agreement are for convenience only and are not part of
this Agreement.

IN WITNESS WHEREOF, the parties hereto have
executed this Fiscal Agency Agreement as of the date first
above written.

THE REPUBLIC OF ARGENTINA

By _____
   Name:
   Title:

BANKERS TRUST COMPANY

By *Wanda Camacho*
   Name: Wanda Camacho
   Title: Assistant Secretary

19

# E X H I B I T   B

Exhibit 1
[Form of Global Bond]


Unless this certificate is presented by an authorized representative of The Depository Trust Company (55 Water Street, New York, New York) (the "Depository") to the Republic (as defined below) or its agent for registration of transfer, exchange or payment, and any certificate issued is registered in the name of Cede & Co. or such other name as requested by an authorized representative of the Depository and any payment is made to Cede & Co., ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL since the registered owner hereof, Cede & Co., has an interest herein.

Unless and until this certificate is exchanged in whole for Bonds in definitive registered form, this certificate may not be transferred except as a whole by the Depository to a nominee thereof or by a nominee thereof to the Depository or by the Depository or any such nominee to a successor of the Depository or a nominee of such successor.

REGISTERED                          CUSIP: 040 114 AH3
NO.                                 ISIN:  US 040 114 AH34


THE REPUBLIC OF ARGENTINA
U.S.$1,250,000,000
8 3/8% BONDS DUE DECEMBER 20, 2003


The Republic of Argentina (the "Republic"), for value received, hereby promises to pay to Cede & Co., or its registered assigns, the principal sum of U.S.$_____ on December 20, 2003 (the "Maturity Date"), together with such further sums, if any, as may be payable by way of Additional Amounts (as defined herein), upon presentation and surrender of this Bond and to pay interest thereon at the rate of 8 3/8% per annum from December 20, 1993 together with Additional Amounts, if any, until the principal hereof is paid, in two equal semi-annual installments in arrears on the 20th day of June and the 20th day of December in each year (each such date an "Interest Payment Date") commencing on June 20th, 1994, and on the Maturity Date.

This is a Registered Global Bond representing U.S.$_____ aggregate principal amount of a duly authorized issue of debt securities of the Republic designated as its 8 3/8% Bonds due December 20, 2003 (the

"Bonds"), initially limited in aggregate principal amount to
U.S.$1,250,000,000. This Registered Global Bond is issued
under and subject to a Fiscal Agency Agreement dated as of
December 10, 1993 (the "Fiscal Agency Agreement"), between
the Republic and Bankers Trust Company, as Fiscal Agent (the
"Fiscal Agent", which term includes any successor fiscal
agent) to which Fiscal Agency Agreement reference is hereby
made for a statement of the respective rights, duties and
immunities of the Republic, the Fiscal Agent and holders of
the Bonds and the terms upon which the Bonds are, and are to
be, authenticated and delivered. Further references herein
to principal or interest shall be deemed to also refer to
any Additional Amounts which may be payable hereunder.

This Registered Global Bond shall for all purposes
be governed by, and construed in accordance with, the laws
of the State of New York, except with respect to
authorization and execution by the Republic.

Interest on this Registered Global Bond will
accrue from the most recent Interest Payment Date to which
interest has been paid, or, if no interest has been paid or
duly provided for, from December 20, 1993, until the
principal hereof has been paid or duly made available for
payment. Any overdue principal or interest on the Bonds
shall bear interest at the rate of 8 3/8% per annum (before
as well as after judgment) until paid, or if earlier, when
the full amount of the moneys payable has been received by
the Fiscal Agent and notice to that effect has been given in
accordance with the provisions set forth herein. The
interest so payable, and punctually paid or duly provided
for, on any Interest Payment Date will be paid to the person
in whose name this Registered Global Bond (or one or more
predecessor Registered Global Bonds) is registered at the
close of business on June 5 or December 5 (whether or not a
Business Day, as defined below), as the case may be, next
preceding such Interest Payment Date (each such day a
"Regular Record Date"). Any such interest not so punctually
paid or duly provided for will be paid to the person in
whose name this Registered Global Bond (or one or more
predecessor Registered Global Bonds) is registered at the
close of business on a special record date for the payment
of such defaulted interest to be fixed by the Fiscal Agent,
notice whereof shall be given to the registered holder
hereof not less than 10 days prior to such special record
date, or be paid at any time in any other lawful manner.
Interest payments on this Registered Global Bond will
include interest accrued to but excluding the Interest
Payment Dates or the Maturity Date, as the case may be.
Interest will be calculated on the basis of a 360-day year
consisting of twelve 30-day months.

In the event that the Maturity Date or any Interest Payment Date with respect to this Registered Global Bond shall be a day that is not a Business Day, the registered holder hereof shall not be entitled to payment until the next following Business Day. For purposes hereof, "Business Day" shall mean a day on which banking institutions in The City of New York and at the applicable place of payment are not authorized or obligated by law or executive order to close. No further interest shall be paid in respect of the delay in such payment.

Payment of the principal of and interest on this Registered Global Bond will be made by wire transfer in immediately available funds to a bank account in The City of New York designated by the holder of this Registered Global Bond. If Bonds in definitive registered form are issued in exchange for this Registered Global Bond, payment of the principal of such Bonds will be made upon presentation and surrender of such Bonds at the office of the Fiscal Agent maintained for that purpose in the Borough of Manhattan, The City of New York, or at the office of any Paying Agent appointed by the Republic for such purpose pursuant to the Fiscal Agency Agreement. Payment of interest due prior to or on the Maturity Date will be made by forwarding by post or otherwise delivering a check, to the registered addresses of registered holders of Bonds, or, at the option of the Republic, otherwise transferring funds to the registered holders of the Bonds. Payment of the principal of and interest on the Bonds will be made in such coin or currency of the United States of America, as at the time of payment, is legal tender for payment of public and private debts.

This Registered Global Bond is not subject to any sinking fund, is not redeemable at the option of the Republic and is not repayable at the option of the holder prior to maturity.

All payments in respect of principal of and interest on this Registered Global Bond will be made free and clear of, and without withholding or deduction for, or on account of, any taxes, duties, assessments or governmental charges (together, "Taxes") of whatsoever nature imposed, levied, collected, withheld or assessed by or within the Republic of Argentina or any authority thereof or therein having power to tax, unless such withholding or deduction is required by law. In such event, the Republic will pay to the registered holder of this Registered Global Bond such additional amounts (the "Additional Amounts") as will result in receipt by the holders of Bonds of the amounts which would have been received by them had no such withholding or deduction been required, except that no such

3

Additional Amounts shall be payable with respect to any Bond:

     (a)  to a holder (or a third party on behalf of a holder) where such holder is liable for such Taxes in respect of such Bond by reason of such holder having some connection with the Republic of Argentina, other than the mere holding or ownership of such Bond or the receipt of the relevant payment in respect thereof; or

     (b)  if the Bond is surrendered more than 30 days after the Relevant Date and such surrender is required for payment except to the extent that the holder thereof would have been entitled to such Additional Amounts for presenting the same for payment on the last day of such period of 30 days.  For this purpose, the "Relevant Date" in relation to any Bond means whichever is the later of:

        (i)  the date on which the payment in respect of such Bond becomes due and payable; or

        (ii)  if the full amount of the moneys payable on such date in respect of such Bond has not been received by the Fiscal Agent on or prior to such date, the date on which notice is duly given to the holders of Bonds that such moneys have been so received and are available for payment.

So long as any Bond remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

So long as any Bond remains outstanding, save for the exceptions set forth below, the Republic will not create or permit to subsist, or permit Banco Central de la República Argentina ("Banco Central") to create or permit to subsist, any lien, pledge, mortgage, security interest, indenture, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness of the Republic or Banco Central unless, at the same time or prior thereto, the Republic's obligations under the Bonds either (i) are secured equally and rateably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by not less than 66-2/3% of the registered holders of the Bonds then outstanding.

Notwithstanding the foregoing, the Republic may permit to subsist:

(i)  any Lien upon property to secure Public External Indebtedness of the Republic or Banco Central incurred for the purpose of financing the acquisition of such property; any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(ii)  any Lien existing on such property at the time of its acquisition to secure Public External Indebtedness of the Republic or Banco Central and any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(iii)  any Lien created in connection with the transactions contemplated by the Republic of Argentina 1992 Financing Plan dated June 23, 1992 sent to the international banking community with the communication dated June 23, 1992 from the Minister of Economy and Public Works and Services of Argentina (the "1992 Financing Plan") and the implementing documentation therefor, including any Lien to secure obligations under the collateralized bonds issued thereunder (the "Par and Discount Bonds") and any Lien securing indebtedness outstanding on the date hereof to the extent required to be equally and rateably secured with the Par and Discount Bonds;

(iv)  any Lien in existence on the date of the Fiscal Agency Agreement;

(v)  any Lien securing Public External Indebtedness of the Republic or Banco Central issued upon surrender or cancellation of any of the Par and Discount Bonds or the principal amount of any indebtedness outstanding as of June 23, 1992, in each case, to the extent such Lien is created to secure such Public External Indebtedness on a basis comparable to the Par and Discount Bonds;

(vi)  any Lien on any of the Par and Discount Bonds; and

5

(vii)   any Lien securing Public External Indebtedness incurred for the purpose of financing all or part of the costs of the acquisition, construction or development of a project provided that (a) the holders of such Public External Indebtedness expressly agree to limit their recourse to the assets and revenues of such project as the principal source of repayment of such Public External Indebtedness and (b) the property over which such Lien is granted consists solely of such assets and revenues.

For purposes of this section:

"External Indebtedness" means obligations (other than the Bonds) for borrowed money or evidence by bonds, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic provided that no Domestic Foreign Currency Indebtedness shall constitute External Indebtedness.

"Public External Indebtedness" means, with respect to the Republic or Banco Central, any External Indebtedness of, or guaranteed by, the Republic or Banco Central, as the case may be, which (i) is publicly offered or privately placed in securities markets, (ii) is in the form of, or represented by, bonds, notes or other securities or any guarantees thereof and (iii) is, or was intended at the time of issue to be, quoted, listed or traded on any stock exchange, automated trading system or over-the-counter or other securities market (including, without prejudice to the generality of the foregoing, securities eligible for PORTAL or a similar market for the trading of securities eligible for sale pursuant to Rule 144A under the U.S. Securities Act of 1933 (or any successor law or regulation of similar effect)).

"Domestic Foreign Currency Indebtedness" means (i) the following indebtedness: (a) Bonos del Tesoro issued under Decree No. 1527/91 and Decree No. 1730/91, (b) Bonos de Consolidación issued under Law No. 23,982 and Decree No. 2140/91, (c) Bonos de Consolidación de Deudas Previsionales issued under Law No. 23,982 and Decree No. 2140/91, (d) Bonos de la Tesorería a 10 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (e) Bonos de la Tesorería a 5 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (f) Ferrobonos issued under Decree No. 52/92 and Decree No. 526/92 and (g) Bonos de Consolidación de Regalías Hidrocarburíferas a 16 Años de Plazo issued under Decree No. 2284/92 and Decree No. 54/93; (ii) any indebtedness issued

6

in exchange, or as replacement, for the indebtedness referred to in (i) above; and (iii) any other indebtedness payable by its terms, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic of Argentina which is (a) offered exclusively within the Republic of Argentina or (b) issued in payment, exchange, substitution, discharge or replacement of indebtedness payable in the lawful currency of the Republic of Argentina; provided that in no event shall the following indebtedness be deemed to constitute "Domestic Foreign Currency Indebtedness": (1) Bonos Externos de la República Argentina issued under Law No. 19,686 enacted on June 15, 1972 and (2) any indebtedness issued by the Republic in exchange, or as replacement, for any indebtedness referred to in (1) above.

If any of the following events ("Events of Default") occurs and is continuing:

(a)  the Republic fails to pay any principal of any of the Bonds when due and payable or fails to pay any interest on any of the Bonds when due and payable and such failure continues for a period of 30 days; or

(b)  the Republic does not perform or comply with any one or more of its other obligations in the Bonds or in the Fiscal Agency Agreement, which default is incapable of remedy or is not remedied within 90 days after written notice of such default shall have been given to the Republic by the Fiscal Agent or the registered holders of at least 25% in aggregate principal amount of the Bonds; or

(c)  any event or condition shall occur which results in the acceleration of the maturity (other than by optional or mandatory prepayment or redemption) of any Public External Indebtedness of the Republic or Banco Central yhaving an aggregate principal amount of U.S.$30,000,000 or more, or any default in the payment of principal of, or premium or prepayment charge (if any) or interest on, any such Public External Indebtedness having an aggregate principal amount of U.S.$30,000,000 or more, shall occur when and as the same shall become due and payable, if such default shall continue for more than the period of grace, if any, originally applicable thereto; or

(d)  a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic; or

7

(e)  the validity of the Bonds shall be contested by the Republic;

then the holders of not less than 25% in aggregate principal amount of the Bonds, by notice in writing to the Republic at the specified office of the Fiscal Agent, shall declare the principal amount of all the Bonds to be due and payable immediately and in the case of (a) and (d) above, each holder of Bonds may by such notice in writing declare the principal amounty of Bonds held by it to be due and payable immediately, and upon any such declaration such principal amount shall be immediately due and payable upon the date that such written notice is received by the Republic unless prior to such date all Events of Default in respect of all the Bonds shall have been cured; provided that if, at any time after the principal of the Bonds shall have been declared due and payable, and before any sale of property under any judgment or decree for the payment of monies due shall have been obtained or entered as hereinafter provided, the Republic shall pay or shall deposit with the Fiscal Agent a sum sufficient to pay all matured amounts of interest and principal upon all the Bonds which shall have become due otherwise than solely by declaration (with interest on overdue amounts of interest, to the extent permitted by law, and on such principal of each Bond at the rate of interest set forth in the title of this Bond, to the date of such payment or deposit) and the expenses of the Fiscal Agent, and reasonable compensation to the Fiscal Agent, its agents, legal advisors, and any and all defaults under the Bonds, other than the non-payment of principal on the Bonds which shall have become due solely by declaration, shall have been remedied, then, and in every such case, the holders of 75% in aggregate principal amount of the Bonds then outstanding, after a meeting of Bondholders held in accordance with the procedures described herein and in the Fiscal Agency Agreement, by written notice to the Republic at the specified office of the Fiscal Agent, may on behalf of the holders of all of the Bonds waive all defaults and rescind and annul such declaration and its consequences; but no such waiver or recission and annulment shall extend to or shall affect any subsequent default, or shall impair any right consequent thereon.

The Fiscal Agent has been appointed registrar for the Bonds, and the Fiscal Agent will maintain at its office in the Borough of Manhattan, The City of New York a register for the registration and registration of transfers and exchanges of Bonds.  Subject to the limitations, terms and conditions set forth herein and in the Fiscal Agency Agreement, this Registered Global Bond may be transferred at the aforesaid office of the Fiscal Agent by surrendering

8

this Registered Global Bond for cancellation, and thereupon the Fiscal Agent shall issue and register in the name of the transferee, in exchange herefor, a new Registered Global Bond or Bonds having identical terms and provisions and having a like aggregate principal amount in authorized denominations. Upon the occurrence of certain events specified in Section 6 of the Fiscal Agency Agreement, this Registered Global Bond is exchangeable at said office of the Fiscal Agent for Bonds in definitive registered form without coupons in authorized denominations of U.S.$1,000 and integral multiples thereof in an equal aggregate principal amount and having identical terms and provisions as this Registered Global Bond. On or after such exchange, the Fiscal Agent shall make all payments to be made in respect of such Bonds in definitive registered form to the registered holders thereof regardless of whether such exchange occurred after the record date for such payment. All Registered Global Bonds surrendered for transfer shall be accompanied by a written instrument of transfer in form satisfactory to the Fiscal Agent and executed by the registered holder in person or by the holder's attorney duly authorized in writing. No service charge will be required for any such transfers and exchanges, but the Republic may require payment of a sum sufficient to cover any stamp or other tax or other governmental charge in connection therewith. The Fiscal Agent shall not be required to register any transfer or exchange of any Registered Global Bond during the period from any Regular Record Date to the corresponding Interest Payment Date.

No provision of this Registered Global Bond or of the Fiscal Agency Agreement shall alter or impair the obligation of the Republic, which is absolute and unconditional, to pay the principal of and interest on this Registered Global Bond at the time, place, and rate, and in the coin or currency, herein prescribed.

The Republic, the Fiscal Agent and any agent of the Republic or the Fiscal Agent may treat the holder in whose name this Registered Global Bond is registered as the absolute owner hereof for all purposes, whether or not this Registered Global Bond be overdue, and none of the Republic, the Fiscal Agent or any such agent shall be affected by notice to the contrary. All payments to or on the order of the registered holder of this Registered Global Bond are valid and effectual to discharge the liability of the Republic and the Fiscal Agent and any Paying Agent hereon to the extent of the sum or sums paid.

Claims against the Republic for payment in respect of the Bonds and interest payments thereon shall be

prescribed and become void unless made within 10 years (in
the case of principal) and 5 years (in the case of interest)
from the appropriate Relevant Date in respect thereof.

The Republic and the Fiscal Agent may at any time
or from time to time, without notice to or the consent of
the registered holder of any Bond, enter into one or more
agreements supplemental to the Fiscal Agency Agreement to
create and issue further bonds ranking pari passu with the
Bonds in all respects (or in all respects except for the
payment of interest accruing prior to the issue date of such
further bonds or except for the first payment of interest
following the issue date of such further bonds) and so that
such further bonds shall be consolidated and form a single
series with the Bonds and shall have the same terms as to
status, redemption or otherwise as the Bonds.

A meeting of registered holders of Bonds may be
called at any time and from time to time to make, give or
take any request, demand, authorization, direction, notice,
consent, waiver or other action provided by the Fiscal
Agency Agreement or the Bonds to be made, given or taken by
registered holders of Bonds or to modify, amend or
supplement the terms of the Bonds or the Fiscal Agency
Agreement as hereinafter provided.  The Fiscal Agent may at
any time call a meeting of holders of Bonds for any such
purpose to be held at such time and at such place in the
Borough of Manhattan, The City of New York as the Fiscal
Agent shall determine.  Notice of every meeting of regis-
tered holders of Bonds, setting forth the time and the place
of such meeting and in general terms the action proposed to
be taken at such meeting, shall be given as provided herein,
not less than 30 nor more than 60 days prior to the date
fixed for the meeting.  In case at any time the Republic or
the registered holders of at least 10% in aggregate
principal amount of the Bonds then outstanding shall have
requested the Fiscal Agent to call a meeting of the regis-
tered holders of Bonds for any such purpose, by written
request setting forth in reasonable detail the action
proposed to be taken at the meeting, the Fiscal Agent shall
call such meeting for such purposes by giving notice
thereof.

At any meeting of registered holders of Bonds duly
called and held as specified above, upon the affirmative
vote, in person or by proxy thereunto duly authorized in
writing, of the registered holders of not less than 66-2/3%
in aggregate principal amount of the Bonds then outstanding
(or of such other percentage as may be set forth herein with
respect to the action being taken), or with the written
consent of the registered holders of not less than 66-2/3%

10

in principal amount of all the Bonds at the time
outstanding, the Republic may modify any of the terms or
provisions contained in the Bonds in any way, provided that
the consent of the registered holders of all the Bonds at
the time outstanding is required if any such action would
(A) change the due date for the payment of the principal of
or any installment of interest on any Bond, (B) reduce the
principal amount of any Bond, the portion of such principal
amount which is payable upon acceleration of the maturity of
such Bond or the interest rate thereon, (C) change the coin
or currency in which or the required places at which payment
with respect to interest or principal in respect of the
Bonds is payable, (D) reduce the proportion of the principal
amount of Bonds the vote or consent of the registered
holders of which is necessary to modify, amend or supplement
the Fiscal Agency Agreement or the terms and conditions of
Bonds or to make, take or give any request, demand,
authorization, direction, notice, consent, waiver, or other
action provided hereby or thereby to be made, taken or
given, or (E) change the obligation of the Republic to pay
additional amounts.

The Fiscal Agent and the Republic may agree,
without the consent of the registered holders of Bonds, to
(i) any modification of any provisions of the Fiscal Agency
Agreement which is of a formal, minor or technical nature or
is made to correct a manifest error and (ii) any other
modification (except as mentioned in the Bonds of the Fiscal
Agency Agreement), and any waiver or authorization of any
breach or proposed breach, of any of the provisions of the
Fiscal Agency Agreement which is in the opinion of the
Fiscal Agent not materially prejudicial to the interests of
the registered holders of Bonds.  Any such modification,
authorization or waiver shall be binding on the registered
holders of Bonds and, if the Fiscal Agent so requires, such
modification shall be notified to the registered holders of
Bonds as soon as practicable.

All notices to the registered holders of Bonds
will be published in English in London, England in the
Financial Times, in New York, New York in The Wall Street
Journal, and, so long as the Bonds are listed on the
Luxembourg Stock Exchange and the Stock Exchange of Hong
Kong Limited, in Luxembourg in the Luxemburger Wort and in
Hong Kong in the South China Morning Post, respectively.  If
at any time publication in any such newspaper is not
practicable, notices will be valid if published in an
English language newspaper with general circulation in the
respective market regions as the Republic shall determine.
In addition, notices will be published in Spanish in a
newspaper of general circulation in the Republic, as the

Republic shall determine.  Any such notice shall be deemed
to have been given on the date of such publication or, if
published more than once or on different dates, on the first
date on which publication is made.

The Republic has in the Fiscal Agency Agreement
irrevocably submitted to the jurisdiction of any New York
State or Federal court sitting in the Borough of Manhattan,
New York City and the courts of the Republic of Argentina
(the "Specified Courts") over any suit, action, or
proceeding against it or its properties, assets or revenues
with respect to the Bonds or the Fiscal Agency Agreement (a
"Related Proceeding").  The Republic has in the Fiscal
Agency Agreement waived any objection to Related Proceedings
in such courts whether on the grounds of venue, residence or
domicile or on the ground that the Related Proceedings have
been brought in an inconvenient forum.  The Republic agrees
that a final non-appealable judgment in any such Related
Proceeding (the "Related Judgment") shall be conclusive and
binding upon it and may be enforced in any Specified Court
or in any other courts to the jurisdiction of which the
Republic is or may be subject (the "Other Courts"), by a
suit upon such judgment.

The Republic has in the Fiscal Agency Agreement
agreed that (i) service of all writs, process and summonses
in any Related Proceeding or any action or proceeding to
enforce or execute any Related Judgment brought against it
in the State of New York may be made upon Banco de la Nación
Argentina, presently located at 299 Park Avenue, New York,
New York 10171, and, if such person is not maintained by the
Republic as its agent for such purpose, the Republic will
appoint CT Corporation System to act as its agent for such
purpose.

To the extent that the Republic or any of its
revenues, assets or properties shall be entitled, in any
jurisdiction in which any Specified Court is located, in
which any Related Proceeding may at any time be brought
against it or any of its revenues, assets or properties, or
in any jurisdiction in which any Specified Court or Other
Court is located in which any suit, action or proceeding may
at any time be brought solely for the purpose of enforcing
or executing any Related Judgment, to any immunity from
suit, from the jurisdiction of any such court, from set-off,
from attachment prior to judgment, form attachment in aid of
execution of judgment, from execution of a judgment or from
any other legal or judicial process or remedy, and to the
extent that in any such jurisdiction there shall be
attributed such an immunity, the Republic has irrevocably
agreed not to claim and has irrevocably waived such immunity

12

to the fullest extent permitted by the laws of such jurisdiction (and consents generally for the purposes of the Foreign Sovereign Immunities Act to the giving of any relief or the issue of any process in connection with any Related Proceeding or Related Judgment), provided that such waiver shall not be effective (i) with respect to the assets which constitute freely available reserves pursuant to Article 6 of the Convertibility Law (the "Convertibility Law"), the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of Banco Central consistently prepared pursuant to Article 5 of the Convertibility Law and (ii) with respect to property of the public domain located in the territory of The Republic of Argentina or property owned by the Republic and located in its territory which is dedicated to the purpose of an essential public service, and provided further that such agreement and waiver, insofar as it relates to any jurisdiction other than a jurisdiction in which a Specified Court is located, is given solely for the purpose of enabling the Fiscal Agent or a holder of Bonds to enforce or execute a Related Judgment.  The waiver of immunities referred to herein constitutes only a limited and specific waiver for the purpose of the Bonds and the Fiscal Agency Agreement and under no circumstances shall it be interpreted as a general waiver of the Republic or a waiver with respect to proceedings unrelated to the Bonds or the Fiscal Agency Agreement.

Unless the certificate of authentication hereon has been executed by the Fiscal Agent by manual signature, this Registered Global Bond shall not be entitled to any benefit under the Fiscal Agency Agreement or be valid or obligatory for any purpose.

        IN WITNESS WHEREOF, the Republic of Argentina,
pursuant to due authorization of law, has caused this
Registered Global Bond to be duly executed by an authorized
representative.

DATED:                          THE REPUBLIC OF ARGENTINA

                                By:_____


FISCAL AGENT'S CERTIFICATE
OF AUTHENTICATION


        This is one of the Bonds of the series designated
therein referred to in the within-mentioned Fiscal Agency
Agreement.

Bankers Trust Company,
  as Fiscal Agent


By_____
   Authorized Signatory

                              14

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR OTHER
        IDENTIFYING NUMBER OF ASSIGNEE

_____

_____

the within Registered Global Bond, and all rights
thereunder, hereby irrevocably constituting and appointing

_____ attorney to
transfer said Registered Global Bond on the books of the
Republic, with full power of substitution in the premises.

Dated:_____                    _____
                                      Signature of transferor


Signature of transferor guaranteed by:_____


    NOTE:  The signature to this assignment must correspond
with the name as written upon the face of the within
Registered Global Bond in every particular without
alteration or enlargement or any change whatsoever and must
be guaranteed by a commercial bank or trust company having
its principal office in The City of New York or by a member
of the New York Stock Exchange.

15

# EXHIBIT C

# Oberbank
## 3 Banken Gruppe

**Oberbank AG, Linz
Zweigniederlassung Bayern
Oskar-von-Miller-Ring 38
80333 München**

Oberbank AG, Linz Zweigniederl. · Innenrevision ·
Oskar-von-Miller-Ring 38, 80333 München

234/0000096/12//76185-01 00/0.43EUR

Herrn
Ernst Ritoper
Piber 3
8580 KÖFLACH
ÖSTERREICH

30  4175

| | |
|---|---|
| Bank-Nr. | 01-31000700 |
| Gp-Nr. | 0060071099 |
| Depot-Nr. | 1027102597 |
| Fil.-Nr. | 100 |

| | |
|---|---|
| Datum | 14.01.2008 |
| Blatt: | 1 |
| Lfd.Nr.: | 2320817 |
| DJ-0000000838/08 | |

## DEPOTAUSZUG    per 31.12.2007

Sehr geehrter Depotkunde,
wir bitten Sie, diese Aufstellung zu prüfen. Einwendungen sind gemäß unseren
Allgemeinen Geschäftsbedingungen unverzüglich nach Zugang dieses Depotauszuges zu er-
heben. Etwaige Beanstandungen richten Sie bitte an die Innenrevision unserer Bank.
In Ihrem Depot waren am 31.12.2007 folgende Wertpapiere verwahrt:

--------------------------------------------------------------------------------
| Nennbetrag/Stück | | Wertpapier-Bezeichnung | Kurswert in EUR |
--------------------------------------------------------------------------------

| | | | |
|---|---|---|---|
| USD | 259.000,00 | 8,375% ARGENTINIEN DL-BDS.1993/2003 | 55.420,83 |
| | | WKN 412637   ISIN US040114AH34 | |
| | | Kurs         31,50 | |
| | | USD-Dev-Kurs           1,4721 | |
| | | GESAMTFAELLIG am 20.12.03 zu 100%, | |
| | | Zinstermin 20/JD WR USA, | |
| | | GUTSCHR.ERTRAEGE/GEGENW. BEI | |
| | | FAELL.Z.G.WHRG.-KTO. | |
| | | Depotentgelt EUR    193,97 | |
| ST | 1.658 | FR.TEMP.INV.FDS-F.HIG.Y ACT.NOM.A(CAP. | 19.398,60 |
| | | WKN 694152   ISIN LU0131126574 | |
| | | Kurs  EUR       11,70 | |
| | | WR LUXEMBURG CBL (GLOBALURKUNDE) | |
| | | Depotentgelt EUR    67,90 | |
| ST | 3.700 | SYNERGON INFO.SYST.LTD.NAM.-AKT. | 25.789,00 |
| | | WKN 789653   ISIN HU0000069950 | |
| | | Kurs  EUR        6,97 | |
| | | WR UNGARN | |
| | | Depotentgelt EUR    90,26 | |
| ST | 375 | SANOCHEMIA PHARMAZEUTICA AG INH.AKTIEN | 3.093,75 |
| | | WKN 919963   ISIN AT0000776307 | |
| | | Kurs  EUR        8,25 | |
| | | GS-VERWAHRUNG,CB DIREKT- VERBINDUNG | |
| | | (STUECKELOS) | |
| | | Depotentgelt EUR     3,87 | |
| ST | 168 | JOWOOD PRODUCTIONS SOFTW.AG AKTIEN | 231,84 |
| | | WKN 935221   ISIN AT0000747357 | |
| | | Kurs  EUR        1,38 | |
| | | GS-VERWAHRUNG,CB DIREKT- VERBINDUNG | |
| | | (STUECKELOS) | |
| | | Depotentgelt EUR     2,50 | |

Folgeblatt    2

## Translation Of Brokerage Account Statement in Relevant Part

Oberbank

3Banken Gruppe

**Oberbank AG, Linz Branch – Controlling -**
**Oskar-von-Miller-Ring 38, 8033 Munich**

**OBERBANK AG, Linz**
**Branch Bavaria**
Oskar –von-Miller-Ring 38
80333 Munich
ABA:             01-31000700
Gp-No.:          0060071099
Acct.-No.:       1027102597
Branch-No.:      100
Date:            Jan 14, 2008
Page:            1
Ref.-No.:        2320817
DJ-00000000838/08

MR. ERNST RITOPER
PIBER 3
8580 KOFLACH
AUSTRIA

## STATEMENT OF ACCOUNT as of December 31, 2007

Dear Account Holder,
We ask that you review this accounting. Pursuant to our General Terms and Conditions any complaints have to be
raised without undue delay from receipt of this Statement of Account. Please direct any complaints you may have to
the attention of our controlling department. As of December 31, 2007 the following securities were held in your
account

| Nominal Value or Number of Shares | Name of Security | Trading Value (EUR) |
|---|---|---|
| USD        259,000.00 | 8.375% Argentina DL-BDS. 1993/2003<br>WKN 412637  ISIN US040114AH34<br>Trade      31.40<br>USD Exchange      1.4721<br>Maturity at Dec 20, 2003 in full<br>Interest 20/JD WR USA<br>Receipts of Interest/Principal at Maturity<br>to be credited to Currency Account<br>Account Fee   EUR   193.97 | 55,420.83 |

[REST OF DOCUMENT RELATES TO OTHER HOLDINGS OF PLAINTIFF]